# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2021AP1525

†Petition for Review filed

Complete Title of Case:

HAYDEN HALTER AND SHAWN HALTER,

PLAINTIFFS-APPELLANTS,

V.

WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION,

DEFENDANT-RESPONDENT.†

| | |
|---|---|
| Opinion Filed: | February 28, 2024 |
| Submitted on Briefs: | August 5, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Lazar, JJ. |
| Concurred: | |
| Dissented: | Neubauer, J. |

Appellant
ATTORNEYS: On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Stacie H. Rosenweig* of *Halling and Cayo, S.C.*, Milwaukee.

Respondent
ATTORNEYS: On behalf of the defendant-respondent, the cause was submitted on the briefs of *Brent W. Jacobson* of *Anderson O'Brien LLP*, Stevens Point.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### February 28, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1525**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV830**

**IN COURT OF APPEALS**

---

HAYDEN HALTER AND SHAWN HALTER,

   PLAINTIFFS-APPELLANTS,

V.

WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Reversed and cause remanded with instructions*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1 LAZAR, J. Hayden Halter and his father Shawn Halter[1] appeal from a judgment in favor of the Wisconsin Interscholastic Athletic Association (WIAA) dismissing, on the merits and with prejudice, all of the Halters' claims for declaratory judgment and common law certiorari as well as their request for a permanent injunction that would allow Halter to retain the titles and points from the 2019 WIAA state wrestling tournament following his suspension at a prior meet and reinstatement of all wins, points, and records. The Halters contend that WIAA is a state actor and is bound by its own rules and that the rules then in effect did not require Halter's penalty for unsportsmanlike conduct to be served at the next *varsity* meet, but rather at the "next competitive event" for which Halter was eligible. They further assert that WIAA acted arbitrarily and violated its written appeals procedures. For the foregoing reasons, we agree with the Halters and reverse.

## BACKGROUND

¶2 In early 2019, Halter was a sophomore at Waterford Union High School. Halter was a talented wrestler; he had won a state title as a freshman and hoped to win another as a sophomore. On Saturday, February 2, 2019, Halter progressed to the championship match at the Southern Lakes Conference wrestling meet at the varsity level. He defeated his opponent and won the meet, but

---

[1] For ease of reference, Hayden will be referred to as Halter; his father as Shawn Halter.

received two unsportsmanlike conduct calls (the propriety of which are not at issue in this appeal).[2]

¶3    WIAA is an organization comprised of more than 500 member schools throughout Wisconsin whose purposes include "emphasiz[ing] interscholastic athletics as a partner with other school activities in the total educational process" and "promot[ing] uniformity of standards in interscholastic athletic competition."[3]    WIAA administers hundreds of interscholastic athletic programs, including the wrestling meets at issue here.  Its members include "all senior high schools in Wisconsin's public school districts," as well as "statewide schools, specialty schools, and religious and independent schools."    Member schools agree to abide by terms and conditions of membership.

¶4    WIAA is governed by a Constitution, Bylaws, Rules of Eligibility, and Sports Regulations.  Student athletes and at least one parent must sign an Athletic Eligibility Information Bulletin that is kept on file with a member school. The Bulletin summarizes WIAA's Rules of Eligibility, including those related to unsportsmanlike conduct.  Eligibility requirements at the relevant time were contained in two separate documents:  the main Rules of Eligibility and the 2018-19 Seasonal Rules.

---

[2]  Pursuant to the National Federation of State High School Associations' rules applicable to wrestling (incorporated by the WIAA rules), unsportsmanlike conduct "involves physical or nonphysical acts" "occur[ring] before, during or after a match."

[3]  WIAA claims to be "the first high school athletic association organized in the country," dating its formation back to "[t]he first formal effort by school administrators to become involved in high school athletics" at a State Teachers Association meeting in December 1896.

¶5    Pursuant to these rules, an athlete receiving two unsportsmanlike conduct calls in one meet is immediately ejected from that meet.  In addition, both the Rules of Eligibility and Seasonal Rule 8.a for Winter 2018-19 state that "[a] student, disqualified from a contest for flagrant or unsportsmanlike conduct, is suspended from interscholastic competition for no less than the next competitive event (but not less than one complete game or meet)."  Thus, after Halter's second unsportsmanlike conduct violation, he was immediately ejected from the conference meet and suspended from the "next competitive event."

¶6    WIAA took the position that the "next competitive event" was the Regional meet on February 9, 2019.  Halter, however, sought to satisfy his suspension by registering for and then sitting out of the Badger Invitational, a junior varsity/varsity reserve meet that was scheduled several days prior to Regionals.[4]  Halter had competed at the varsity rather than junior varsity/varsity reserve level for the entirety of his high school wrestling career.  Characterizing Halter's registration for the Badger Invitational as an attempt to "circumvent" its rules, WIAA communicated to Halter's coach and Waterford's athletic director that its decision on Halter's ineligibility for Regionals (affirmed by its Executive Director) was final and unappealable.

¶7    Two days before Regionals, the Halters filed a lawsuit against WIAA in the circuit court.[5]  Pursuant to the Rules of Eligibility, they also filed a

---

[4] All parties agree that Halter was eligible to participate in this meet because he had not yet competed in the maximum number of regular season meets allowed by WIAA rules.

[5] The Honorable Michael J. Piontek presided over the temporary injunction hearing and granted an order in the Halters' favor.  The court subsequently clarified its original order with a seven-page Decision and Temporary Restraining Order dated February 15, 2019.

Notice of Appeal to the WIAA Board of Control on the same date.[6] WIAA denied the appeal approximately thirty minutes after it was filed, asserting that "[t]here is not an internal appeal to the WIAA Board afforded for this matter." WIAA asserted that "[t]he only 'appeal' available takes place at the mat during the match per NFHS wrestling rules." The Halters sought and obtained a temporary restraining order from the circuit court allowing Halter to participate in Regionals and preventing WIAA from deeming him ineligible to compete until further order. Halter went on to win Regionals and ultimately to win a second WIAA state title for his weight class.

¶8      After conducting an evidentiary hearing in May 2021, however, the circuit court[7] ruled in favor of WIAA "in all respects," denying the Halters' motions for certiorari, declaratory judgment, and a permanent injunction. The court found, among other things, that WIAA's interpretation of its rules, under which Halter would have been ineligible to compete in Regionals (and therefore the other meets in the state tournament series), was "in accord with a long-standing policy of the WIAA," did not violate Halter's procedural or substantive due process rights, and that the rules at issue were "reasonable in their context, reasonably applied." This judgment had the effect of stripping Halter of his 2019

---

[6] WIAA's Appeal Process contained in the Rules of Eligibility allows a student or parent who "is dissatisfied with a decision or with a ruling or interpretation of the Executive Director relative to the provisions of the Constitution, Bylaws, Rules of Eligibility, or Guide for Officials" to file a Notice of Appeal and request a formal hearing. The movant "shall" be notified of a date for a hearing before the Board of Control and is then entitled to a written decision that "shall state the conclusions of the Board."

[7] The Honorable Eugene A. Gasiorkiewicz presided over the case beginning in April 2021.

state title and eliminating all of Halter's matches, places, points, and scores from Regionals through the rest of the season.

¶9     The Halters appeal the judgment, seeking reinstatement of Halter's 2019 wins and state title. They argue that WIAA acted in an arbitrary and unreasonable manner in refusing to accept that Halter satisfied his suspension by sitting out of the February 9, 2019 junior varsity/varsity reserve meet based on its rules as written at the time,[8] warranting certiorari, declaratory, and injunctive relief.

## DISCUSSION

¶10     The underlying complaint is based upon, among other things, common law certiorari, the declaratory judgment act, and a request for a permanent injunction. The Halters seek relief under one or more of these grounds. In order to prevail under any, the Halters must establish that Halter has a right to certiorari review and/or declaratory relief, and with that, an accompanying equitable right to a permanent injunction. This presents an issue of first impression.

---

[8] In April 2019, in direct response to the Halter controversy, WIAA revised both of the eligibility rules at issue to explicitly state that a suspension must be served "at the same level of competition as the disqualification." WIAA insists that this language clarifies rather than changes the rules. WIAA did not remove the section allowing for a direct appeal to the Board of Control from the Rules of Eligibility.

### 1. Judicial Review of WIAA's Rules

### A. WIAA is a state actor for the purpose of this appeal.

¶11 The threshold question is whether WIAA's eligibility determinations under its rules (regarding eligibility, suspensions, and appeal) are subject to judicial review by virtue of it being a state actor. There is a legal distinction between general education institutions and voluntary sports associations like WIAA. "The education of children within a specified age range is compulsory, and [s]tates specify the minimum number of hours per day and the minimum number of days per year that a student must attend classes, as well as many aspects of the school curriculum." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2051 (2021) (Alito, J., concurring); *see also* WIS. CONST. art. X, § 3. There is no dispute that public schools are state actors, and as such, are subject to judicial review of their officials' decisions under certain circumstances. *See New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985). Voluntary sports associations, however, are not necessarily always state actors, but they may be.

¶12 WIAA's status as a state actor was not originally an issue in this case: As it did in *WIAA v. Gannett Co., Inc.*, 658 F.3d 614, 616 (7th Cir. 2011), WIAA chose not to challenge the Halters' assertion that it is a state actor for the purposes of this case. But in response to this court's request for supplemental briefing on the issue, WIAA asserted that it is *not* a state actor. We conclude that under *Brentwood Academy v. Tennessee Secondary Schools Athletic Ass'n*, 531 U.S. 288 (2001), WIAA is, in fact, a state actor.

¶13 In *Brentwood Academy*, the United States Supreme Court set forth the appropriate fact-bound inquiry to determine whether a statewide voluntary association created to regulate interscholastic athletic competition "may be

regarded as engaging in state action when it enforces a rule." *Id.* at 290. Courts are to determine if the private character of the association has been "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298.

¶14    The sports association at issue in ***Brentwood Academy***, TSSAA, was a single-state association consisting of almost all of the public schools in Tennessee (290) and some (55) private schools. *Id.* at 291. Thus, while the association labeled itself as "voluntary," it was actually the only game in town. *See id.* at 293. TSSAA was governed by a Board of Control consisting almost entirely of public school employees. *Id.* at 300. The majority of its revenue was from tournament ticket sales. *Id.* at 299.

¶15    After reviewing these facts, the ***Brentwood*** court summarized why TSSAA was pervasively entwined with the State of Tennessee:

> In sum, to the extent of 84% of its membership, [TSSAA] is an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling. There would be no recognizable Association, legal or tangible, without the public school officials, who do not merely control but overwhelmingly perform all but the purely ministerial acts by which the Association exists and functions in practical terms. Only the 16% minority of private school memberships prevents this entwinement of the Association and the public school system from being total and their identities totally indistinguishable.

*Id.* at 299-300.

¶16    These elements are also true of WIAA. WIAA is a single-state association to which all Wisconsin public high schools belong, along with some private schools (approximately twenty percent of its membership). WIAA's

Board of Control is 9/11th under public school control, a state DPI representative liaises with the Board, WIAA officials are almost all public school officials acting in their official capacity, and WIAA's clearly stated goal is to further "the total educational process." For all practical purposes, Wisconsin public high schools have outsourced athletic programming and competitions to WIAA by making that association's rules and programs their own; as the initial circuit court stated, WIAA is "effectively, a monopoly for purposes of high school athletic competition in the State of Wisconsin."[9] And as in *Brentwood Academy*, it is only the private school memberships in WIAA that prevent its entwinement with the Wisconsin public school system from being total.

¶17 We conclude that under *Brentwood Academy* it is appropriate to consider WIAA a state actor here. Thus, WIAA is subject to certain limitations in

---

[9] The Halters also point to a 1947 Wisconsin State Senate resolution declaring that "'[a]ctive participation in team sports is considered healthful and conducive to building strong bodies of growing youths, and should be encouraged as far as consistent with that purpose'" while seeking an Attorney General Opinion related to WIAA, its rules, and its relationship with public schools and students. 38 Wis. Op. Att'y Gen. 83-84 (1949) (quoting S. Res. 41 (Wis. 1947)). The Attorney General opined:

> When the school authorities by proper action take the necessary steps which result in the school becoming a member of the WIAA, the effect is to make the rules or regulations of that association those of the school. Hence, so far as the individual pupil is concerned, the rules of the association are rules of the school authorities and he must comply with them to compete.

*Id.* at 87-88. Because Attorney General opinions may be cited only for persuasive purposes, *Clean Water Action Council of Northeast Wisconsin v. DNR*, 2014 WI App 61, ¶21, 354 Wis. 2d 286, 848 N.W.2d 336, and because this information is cumulative to the weight of the entwinements already noted, this court does not consider this opinion in its conclusion that the WIAA is a state actor.

its actions as they pertain to its members and the student athletes subject to its rules.

### B. Limited judicial interference with application of a voluntary association's rules is appropriate under these circumstances.

¶18    The Halters do not argue that there is a property or liberty interest at play here.  Indeed, as discussed in *Isabella A. v. Arrowhead Union High School District*, 323 F. Supp. 3d 1052, 1061 (E.D. Wis. 2018), public high school students do not have a constitutionally protected or fundamental right to participate in WIAA interscholastic athletic competitions that would trigger strict scrutiny of a WIAA decision on eligibility.  But that case involved a federal action brought by a student against a school, not WIAA, and the court specifically did not consider "whether or what procedure [the student] was actually afforded." *Id.*  Nor did it consider whether WIAA provided reasonable, nonarbitrary, and nonoppressive application of its rules to the complaining student based on state law.  Several persuasive cases from outside Wisconsin address the propriety of judicial review of the decisions of state actors, including voluntary athletic associations, pertaining to these issues.

¶19    In *Crane v. Indiana High School Athletic Ass'n*, 975 F.2d 1315 (7th Cir. 1992), for example, the Seventh Circuit examined a student's challenge to the IHSAA's decision on his eligibility based on Indiana law.  Indiana law provides that voluntary associations should be free to establish their own governing principles and guidelines without judicial direction. *Id.* at 1320.  But, among the numerous exceptions to this rule noted by the Seventh Circuit, a voluntary association may not "exercise [its] power to make and enforce rules in an unlawful, arbitrary or malicious manner." *Id.*  Nor may it violate a members'

or students' property or civil rights. *Id.* Finally, the voluntary association must follow its own rules. *Id.* This is especially true when a challenge is brought by a student rather than a member school of the voluntary association; unlike member schools, which "have the internal procedures of their own association available to them to adjudicate disputes, and, if necessary, change rules or leadership," a student like Halter has "no voice in [the sports association's] rules or leadership." *See Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 230 (Ind. 1997).

¶20    The court in *Kentucky High School Athletic Ass'n v. Hopkins County Board of Education*, 552 S.W.2d 685, 687 (Ky. Ct. App. 1977), *overruled on other grounds by National Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77 (Ky. 2001)—a case cited by WIAA—similarly held that while voluntary associations have wide latitude in application of their own rules, they are not free to act arbitrarily, unfairly, or unreasonably:

> As a general rule, courts will not interfere with the internal affairs of voluntary associations. In the absence of mistake, fraud, collusion or *arbitrariness*, the decisions of the governing body of an association will be accepted by the courts as conclusive. Voluntary associations may adopt *reasonable* bylaws and rules which will be deemed valid and binding upon the members of the association unless the bylaw or rule violates some law or *public policy*. It is not the responsibility of the courts to inquire into the expediency, practicality or wisdom of the bylaws and regulations of voluntary associations. These general principles are equally applicable to cases involving state high school athletic associations. Furthermore, the courts will not substitute their interpretations of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the voluntary association itself *so long as that interpretation is fair and reasonable*.

(emphases added; citations omitted). Notably, in its brief, WIAA neglected to include the final—and key—phrase of the *Hopkins* holding (in bold, above).

11

¶21 Voluntary associations in Wisconsin (like those in other states) are quite free to adopt constitutions, bylaws, rules, and regulations, including those about eligibility, discipline, and appeals, and then to interpret and administer those as their governing bodies and/or members dictate. *See Attoe v. Madison Pro. Policemen's Ass'n*, 79 Wis. 2d 199, 206, 255 N.W.2d 489 (1977) ("The management and internal affairs of [a voluntary] association are governed by the constitution and by-laws and constitute a contract between the members of the association."). WIAA is correct in its assertion that, in general, voluntary associations in Wisconsin are entitled to deference in the interpretation and application of their own internal rules of operation. *Id.* at 206 (citing *Herman v. United Auto., A. & A.I. Workers*, 264 Wis. 562, 567, 59 N.W.2d 475 (1953)).[10]

¶22 We hold, however, that this principle is not absolute.[11] There are exceptions to the principle of judicial noninterference for voluntary associations where—as here—a challenge alleging unfair and arbitrary application of a rule by a state actor athletic association is brought by a student who has no voice in the association's rules or leadership. Accordingly, the Halters are entitled to judicial review of WIAA's decision on Halter's eligibility.

---

[10] While WIAA's Constitution gives the Board of Control "sole authority to interpret the provisions of the CONSTITUTION, BYLAWS, and RULES OF ELIGIBILITY, and any other regulations which are adopted," as noted in the dissent, at ¶53, it may *not* do so arbitrarily or unreasonably.

[11] The dissent states its agreement with the majority with respect to limited judicial interference with a voluntary association's internal affairs. Dissent, ¶¶50-53. Notably, it even begins its discussion with the following heading: "Judicial Deference to a Voluntary Organization's *Reasonable* Interpretations of Its Own Rules Is Well-Established." (Emphasis added.) That concept is absolutely correct: reasonable interpretations are not subject to scrutiny. Here, the very heart of this appeal centers upon the *unreasonableness* of WIAA's actions towards Halter.

## II. The Halters are entitled to certiorari relief.

¶23 We turn to the mechanism of review and the merits of the Halters' case. "Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, administrative agency, or other quasi-judicial tribunal." *State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶18, 399 Wis. 2d 696, 967 N.W.2d 460. "Common law certiorari"—as sought here—"is available whenever there is no express statutory method of review." *Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411. As there is no explicit statutory provision for judicial review of WIAA's eligibility decision in this case, we conclude (in line with decisions from other states) that certiorari review is appropriate. *See Abner A. v. Massachusetts Interscholastic Athletic Ass'n*, 192 N.E.3d 1066, 1075 (Mass. 2022) (holding high school athletic association's eligibility decision is a proper subject for certiorari review).

¶24 This court's review, limited to the record[12] below, is of the decision of WIAA, not the circuit court. *Fassett v. City of Brookfield*, 2022 WI App 22,

---

[12] In this appeal, the record below includes evidence taken by the circuit court. *See Nielsen v. Waukesha Cnty. Bd. of Supervisors*, 178 Wis. 2d 498, 521, 504 N.W.2d 621 (Ct. App. 1993) ("A court may, in its discretion, take additional evidence in a certiorari proceeding when such is necessary to the 'proper disposition of the matter.'"); *Klinger v. Oneida County*, 149 Wis. 2d 838, 846, 440 N.W.2d 348 (1989) ("The decision whether it is 'necessary' for the circuit court to take evidence is vested in the discretion of the circuit court."). As we discuss below, WIAA declined to hear Halter's appeal and no record was made before that body. In *Nielsen*, the court indicates that necessity for a circuit court to take additional evidence "may exist where ... the record before the board is incomplete because the aggrieved party was refused an opportunity to be fully heard ...." *Id.* at 522. WIAA initially objected to the taking of new evidence, but has not challenged the circuit court's decision to allow the supplementation of the record. Moreover, not only has neither party challenged the use of that additional evidence in this appeal, they both actually rely upon it to support their arguments.

¶16, 402 Wis. 2d 265, 975 N.W.2d 300. We tailor our review solely to an inquiry as to: "(1) whether [WIAA] kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *Ottman*, 332 Wis. 2d 3, ¶47. "The question for the certiorari court is 'whether the facts set forth in the [record] ... justified the decision ... which was complained of.'" *Merkel v. Village of Germantown*, 218 Wis. 2d 572, 578, 581 N.W.2d 552 (Ct. App. 1998) (quoting *State ex rel. Heller v. Lawler*, 103 Wis. 460, 464, 79 N.W. 777 (1899)).

¶25     The Halters assert that Halter was treated in an arbitrary, oppressive, and unreasonable manner in two ways:  first, that the eligibility rules (together with WIAA's unclear guidance) did not adequately provide notice to Halter as to how he could satisfy his suspension, and, second, that the appeal under the Rules of Eligibility (that clearly provide an appeal not just "at the mat" but to the Board of Control) was denied as being unavailable.

### A. WIAA applied its suspension and appeal rules in an arbitrary, oppressive, or unreasonable manner and as an exercise of its will not its judgment.

¶26 Here, the WIAA eligibility rule is clear on its face, but—if WIAA's testimony is to be accepted—was poorly drafted so that it did not communicate a key disciplinary component. The phrase "next competitive event" is not defined in the rules. Its plain interpretation would therefore be that the next competitive event is the *next* competitive event, and *if* that event is the regional meet, then the regional meet is the "next competitive event" at which the suspension must be served. If, however, there is a meet in between the violation meet and the regional event, that in-between event is the "next competitive event" at which the suspension must be served. WIAA's interpretation that the "next competitive event" was required to be a meet at the same level as the meet at which the violation occurred has no support in the text of its rules.

¶27 The guidance examples that WIAA cites do not support its interpretation either. To begin, WIAA's Rules of Eligibility expressly distinguish between team and individual sports.[13] So, when WIAA points to examples of team sports (football and basketball), those are not relevant to an individual sport. Without the team examples, there are only two individual sport examples—both, coincidentally, about wrestling. The first concerns unsportsmanlike conduct at the first match of a triple match competition and whether the wrestler is disqualified

---

[13] The Rules of Eligibility list team sports as "baseball, basketball, football, hockey, soccer, softball, and volleyball." Individual sports are identified as "cross county, golf, gymnastics, swimming & diving, tennis, track & field, and wrestling."

for that entire day of competition; it is not relevant here.[14] The second repeats almost word-for-word the language in the Rules of Eligibility and Seasonal Rule.[15] Thus, it provides no guidance.[16]

¶28 Even WIAA believed that its rules and guidance examples needed to be "clarified" to support its unwritten interpretation. In direct response to Halter's sitting out the *next* competitive event for which he was eligible to compete (and the circuit court's temporary restraining order), WIAA added a phrase to its rules that a suspension must be "served at the same level of competition as the disqualification." WIAA insists that this in not a "change" to the eligibility rule

---

[14] In ¶¶55-56, the dissent provides questions and answers from a 1994-95 WIAA yearbook and a published WIAA guidance with respect to unsportsmanlike disqualifications in wrestling competitions. Those quoted sections, however, actually support Halter's interpretation of the yearbook and guidance. First, Halter would not have been able to advance and compete further in the meet at which he received the unsportsmanlike conduct calls had the calls been made prior to the end of his last match; he was asked to leave immediately. Next, Halter's disqualification did not take place "in the final regular season contest," thus, he was not disqualified from further "tournament competition." Finally, even though Halter was not disqualified "in his first match at the conference wrestling tournament," he did miss "the following scheduled meet" because the next meet was not the WIAA Regional.

The dissent asserts that Halter's "next scheduled meet" was the WIAA Regional because that was the meet where he was next anticipating to compete. Dissent, ¶56. But the next scheduled meet for Halter's school—and the next scheduled meet at which Halter could compete—was the Badger Invitational.

[15] "**Question:** A wrestler is disqualified, for unsportsmanlike conduct, in his first match at the conference wrestling tournament. When may he return? **Answer:** The wrestler misses the rest of this tournament competition, plus the following scheduled meet. If the next meet is the WIAA regional, this wrestler misses that competition."

[16] The dissent also points to an email sent to all WIAA member schools with wrestlers. Dissent, ¶62. But again, the dissent chooses to ignore the express language in the email: "[A]ny wrestler who is ejected from competition in their last event before regionals … *will be ineligible for regional competition the following week*." This email shows why Halter was still eligible for Regionals: the meet where he received the unsportsmanlike conduct calls was not Halter's "last event before regionals." The Badger Invitational was between the Southern Lakes Conference wrestling meet and Regionals.

but merely an editorial clarification of its previously clearly stated interpretation.[17] But by WIAA's own admission, before the rule "clarification," an athlete could have served a suspension at a game or match at a different competitive level from the violation if there were any such games or matches before the Regionals. WIAA's Deputy Director testified that if Halter—who had been disqualified at a varsity match—had competed in varsity, varsity reserve, and junior varsity meets throughout the season rather than only varsity, he could have served his suspension by sitting out a match at any of those levels.

¶29    While WIAA is entitled to create its own rules and regulations, it must apply them fairly and treat member schools' students reasonably.  Here, Halter relied upon WIAA's rules as they were written.  Following his suspension

---

[17] WIAA uses the words "change," "clarification," and "interpretation" interchangeably in its Minutes to the 2019 Annual Meeting where the additional phrase was added to the eligibility rule:

> The final *change* came about this year, and this *change clarifies* that a student ejected from a contest must serve the suspension at the same level of competition as to qualification. So this is a Board *interpretation that we are putting in writing*. There's plenty of examples on the website, but we figured that we should *add* this in underneath Health & Behavior, Flagrant and Unsportsmanlike Conduct and/or Assault on the Official. On page 39, we would *add* in the shaded areas.  So now it would read, "A student disqualified from a contest for flagrant or unsportsmanlike conduct is suspended from interscholastic competition for no less than the next competitive event (but not less than one complete game or meet) at the same level of competition as a disqualification."

> So this was voted on by the Board of Control for *their interpretations* and for the *clarifications editorially* [and the vote was] 11 to nothing to advance and 11 to nothing to support.

> MR. COLEMAN:  The vote on the *editorial changes* will take place on your pink ballot.

(Emphases added.)

for the two unsportsmanlike calls, he was ejected from the remainder of that meet and required to serve a suspension for the "next competitive event." He was—by the luck of having missed an earlier meet due to injury—eligible to participate in one more regular season meet before Regionals, so his coach signed him up for the Badger Invitational so that he could serve his suspension by sitting out that meet.

¶30    WIAA admitted that Halter was eligible for the Badger Invitational match and it admitted that wrestling is an individual sport that is not age or grade-level dependent. WIAA conceded that neither the Rules of Eligibility nor the Seasonal Rules at the relevant time stated that a student must be suspended from the next *varsity* competitive event or anything about the level of competition. Nevertheless, it determined that the Badger Invitational was not the "next competitive event" and that only missing Regionals would be sufficient punishment for Halter. WIAA's Deputy Director stated that, even before he learned what level Halter had competed in throughout the year, he concluded that missing the Badger Invitational was not enough punishment and, thus, was an attempt to circumvent the rules.[18]

¶31    These facts support our conclusion that WIAA's decision was one of its will, not its judgment. WIAA apparently felt the punishment imposed by the rules as written were not commensurate with Halter's offense, so it attempted to tailor the punishment to have greater impact on Halter. WIAA wanted to see

---

[18] The dissent cherry-picks testimony from various witnesses. *See* Dissent, ¶¶58-61. But a closer review of their testimony, and that of other witnesses, shows contradictory positions. For instance, Dr. Wade Labecki admitted that Halter was technically eligible for the junior varsity meet. Labecki further testified that rule 8a did not say that Halter had to be suspended from the next *varsity* event, and when asked if the rule said "anything about the level of competition at all" he answered, "Word by word it does not."

Halter deemed ineligible for Regionals, and it continues to assert that it was "only fair" for Halter to miss Regionals because that punishment more appropriately fits the crime—but that is not the standard set out in its own rules. Its decision is arbitrary.

¶32     We turn next to WIAA's other allegedly arbitrary decision: When the Halters disputed WIAA's determination that Halter was ineligible for Regionals by filing a Notice of Appeal with the Board of Control pursuant to the Rules of Eligibility, their appeal was denied outright as unavailable when WIAA determined that an "at the mat" appeal was Halter's only available appeal. Again, WIAA can establish whatever appeals process it believes appropriately balances the rights of its member schools and their students against the valid time constraints of its board members. But once it establishes that appeal process, WIAA is bound to adhere to the process it creates.

¶33     On its face, the Rules of Eligibility allow for mandatory appeals to the Board of Control: a student or parent who is "dissatisfied with a decision or with a ruling or interpretation of the Executive Director relative to the provisions of the Constitution, Bylaws, Rules of Eligibility, or Guide for Officials" may file a notice of appeal and request a formal hearing. The movant "shall" be notified of a date for a hearing before the Board of Control and is then entitled to a written decision that "shall state the conclusions of the Board."

¶34     In an effort to explain why appeal to the Board of Control was unavailable to Halter despite these written Rules of Eligibility, WIAA's Deputy Director testified that the suspension rule was also in the Seasonal Rules section and therefore not subject to appeal to the Board of Control. We see no justification for WIAA's position that a decision based on a rule repeated in both

places (one providing for appeal, the other not) would lose its status as an appealable decision in any of WIAA's documents.

¶35 We conclude that both of the WIAA decisions at issue were arbitrary and represented WIAA's will, not its judgment. As a state actor, WIAA is bound by its own written rules—rules it "clarified" shortly after this incident to reflect what WIAA believed was an appropriate consequence for unsportsmanlike conduct—in its treatment of the students of its member schools. Because it did not apply its rules fairly and reasonably to Halter, but instead made an ad hoc interpretation of the suspension rule unsupported by any text or written guidance, and simply ignored its appeal rule, the decision to suspend Halter from the Regional meet cannot stand and must be reversed.

### III. The Halters are entitled to declaratory relief.

¶36 In addition to certiorari relief, the Halters sought a declaratory judgment reinstating Halter's 2019 state title and points. WISCONSIN STAT. § 806.04(1) (2021-22) allows parties to petition a circuit court "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." To obtain a declaration, there must be a justiciable controversy. *Loy v. Bunderson*, 107 Wis. 2d 400, 409-10, 320 N.W.2d 175 (1982).

> A controversy is justiciable when four conditions are met: (1) "A controversy in which a claim of right is asserted against one who has an interest in contesting it"; (2) "The controversy must be between persons whose interests are adverse"; (3) "The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectable interest"; and (4) "The issue involved in the controversy must be ripe for judicial determination."

*Fabick v. Evers*, 2021 WI 28, ¶9, 396 Wis. 2d 231, 956 N.W.2d 856 (quoting *Loy*, 107 Wis. 2d at 410). Whether to grant such a "judgment is addressed to the circuit

court's discretion." ***Olson v. Farrar***, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1.

¶37 As already discussed, Halter has a legally protectable right, as all students of WIAA member schools do, to have WIAA eligibility and appeal rules applied to him in a fair, reasonable, and nonarbitrary manner. That being the case, Halter satisfies the first and third requirements for a declaratory judgment, which were the only requirements disputed by WIAA in this appeal.

¶38 Accordingly, Halter is entitled to a declaration that, pursuant to WIAA's 2019 rules, he served his suspension for unsportsmanlike conduct at the Badger Invitational junior varsity/varsity reserve wrestling meet in accord with WIAA's rules, and he was eligible to compete at the 2019 varsity level wrestling Regionals and subsequent meets. He is entitled to the reinstatement of any titles and points therefrom.

### IV. A permanent injunction is appropriate.

¶39 Finally, "[t]o obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of [and will] injure the plaintiff." ***Pure Milk Prods. Coop. v. National Farmers Org.***, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979). The plaintiffs must show both that: "(1) [they have] no adequate remedy at law; and (2) [they] will suffer irreparable harm if the injunction is not granted." ***Sunnyside Feed Co., Inc. v. City of Portage***, 222 Wis. 2d 461, 472, 588 N.W.2d 278 (Ct. App. 1998); ***Werner v. A. L. Grootemaat & Sons, Inc.***, 80 Wis. 2d 513, 521, 259 N.W.2d 310 (1977). Irreparable harm is that which is "not adequately compensable in damages." ***Pure Milk Prods.***, 90 Wis. 2d at 800. In addition, the movant must establish "that, on

balance, equity favors issuing the injunction." *Nettesheim v. S.G. New Age Prods., Inc.*, 2005 WI App 169, ¶21, 285 Wis. 2d 663, 702 N.W.2d 449.

¶40     A decision to grant or deny an injunction "is within the sound discretion of the circuit court," *Hoffmann v. Wisconsin Electric Power Co.*, 2003 WI 64, ¶10, 262 Wis. 2d 264, 664 N.W.2d 55, "and will only be reversed for an erroneous exercise of discretion." *School Dist. of Slinger v. WIAA*, 210 Wis. 2d 365, 370, 563 N.W.2d 585 (Ct. App. 1997). "The test is not whether [this] court would grant the injunction but whether there was an erroneous exercise of discretion by the circuit court." *Id.* "An erroneous exercise of discretion in the context of an injunction occurs when the [circuit] court:  (1) fails to consider and make a record of the factors relevant to its determination; (2) considers clearly irrelevant or improper factors; and (3) clearly gives too much weight to one factor." *Sunnyside*, 222 Wis. 2d at 471.  In addition, an error of law by the circuit court is an erroneous exercise of discretion.  *School Dist. of Slinger*, 210 Wis. 2d at 370.

¶41     Halter was suspended during a wrestling match and the circuit court temporarily enjoined WIAA from asserting that he had not served that suspension by sitting out the next junior varsity/varsity reserve wrestling match, thereby allowing him to compete at Regionals and beyond in 2019.  After all competitions were complete (and Halter won his second state title), the circuit court held an evidentiary hearing and, in part, denied the Halters' request for a permanent injunction.  That was an erroneous exercise of discretion because the circuit court made legal errors by failing to recognize that WIAA is a state actor (at least for the purposes of this case) and that Halter—like all students of WIAA member schools—has an expectation that WIAA will apply its rules and regulations in

accord with their terms and in a manner that is not arbitrary, oppressive, or unreasonable and is an exercise of its judgment rather than will.

¶42    The injuries to Halter are irreparable and "cannot be compensated by money damages." *See American Mut. Liab. Ins. Co. v. Fisher*, 58 Wis. 2d 299, 305, 206 N.W.2d 152 (1973); *Pure Milk Prods.*, 90 Wis. 2d at 800. The Halters have established "that, on balance, equity favors issuing the [permanent] injunction." *See Nettesheim*, 285 Wis. 2d 663, ¶21.

¶43    Halter is, therefore, entitled to a permanent injunction reinstating his 2019 WIAA Division I state wrestling title, as well as all wins and points (to him and to his team) and all accompanying records and benefits therefrom.

## CONCLUSION

¶44    Based upon the foregoing, we conclude that WIAA is a state actor with respect to this appeal because it is pervasively entwined with the State of Wisconsin. Accordingly, the Halters are entitled to judicial review to determine whether WIAA acted in accord with its rules and regulations and in applying the rules in a nonarbitrary manner.

¶45    We conclude that WIAA applied its eligibility and appeals rules with respect to Halter in a manner that was arbitrary and in accordance with its will and not its judgment. Therefore, the judgment of the circuit court is reversed, and we remand with instructions to enter declarations that: (1) pursuant to WIAA's 2019 Rules of Eligibility, Halter served his suspension for unsportsmanlike conduct at the next competitive event in the sport in which the offense occurred by registering for and sitting out of the Badger Invitational junior varsity/varsity reserve wrestling meet; and (2) Halter was eligible to compete at the 2019

23

wrestling Regionals and any subsequent state competitions, and he is entitled to the reinstatement of any titles, wins, and points (to him and to his team) and all accompanying records and benefits therefrom.

¶46 This court further concludes that Halter is entitled to a permanent injunction reinstating his 2019 WIAA Division I state wrestling title, as well as all wins and points (to him and to his team) and all accompanying records and benefits therefrom. We reverse and remand with directions to enter an injunction consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with instructions.

No.    2021AP1525(D)


¶47    NEUBAUER, J.    (*dissenting*). Hayden Halter received two unsportsmanlike conduct penalties near the end of a high school wrestling meet. Under an applicable rule promulgated by the Wisconsin Interscholastic Athletic Association (WIAA), Halter's punishment was a suspension from "no less than the next competitive event."  WIAA, "a voluntary, unincorporated and non-profit organization" that counts all Wisconsin public senior high schools among its members, adopted this rule in 1995.  For more than twenty years thereafter, WIAA consistently interpreted the rule, through written guidance provided to its members and application in specific disciplinary decisions, to require that a suspension be served at the next event consistent with the student-athlete's competitive history and the event from which the suspension arose.  Halter, though only a sophomore at the time, had wrestled exclusively at the varsity level during the season, and his suspension arose from conduct at a varsity match.

¶48    The next varsity-level event was the end-of-season WIAA Regional Tournament.  To preserve Halter's ability to compete at this tournament, Halter's wrestling coach sought to have him serve the suspension by entering him into a junior varsity[1] tournament that was scheduled to take place several days earlier. Both Halter and his coach concede that but for the suspension, Halter would not have signed up for the junior varsity event.  WIAA declined to allow Halter to

[1] The majority refers to this tournament, the Badger Invitational, as a "junior varsity/varsity reserve" tournament.

serve the suspension at the junior varsity event because, in its view, that would allow him to avoid the consequence of his unsportsmanlike conduct.

¶49    The only question we should answer to resolve this appeal is whether WIAA's decision was reasonable.  It surely was.  WIAA's decision was consistent with the terms and underlying purpose of the "next competitive event" rule, in accord with its guidance documents, and consonant with its practice over more than two decades.  The majority's conclusion that WIAA's decision "was arbitrary and in accordance with its will and not its judgment" cannot be reconciled with these facts.  Majority, ¶45.  Because WIAA's decision was based on a reasonable interpretation and application of the "next competitive event" rule, long-standing principles of deference to a voluntary organization's interpretation and application of its own rules require us to affirm the circuit court's decision.  I respectfully dissent.

## I.    Judicial Deference to a Voluntary Organization's Reasonable Interpretations of Its Own Rules Is Well-Established.

¶50    I begin with a point on which the majority and I agree:  courts generally do not interfere with the internal affairs of voluntary associations like WIAA or second guess their interpretation or application of their own rules. Majority, ¶¶19-21.  Our supreme court has repeatedly recognized this principle. *See, e.g.*, *Herman v. United Auto., A. & A.I. Workers*, 264 Wis. 562, 567, 59 N.W.2d 475 (1953) ("The courts are reluctant to interfere in the internal affairs of [voluntary unincorporated] organizations unless personal or property rights are involved."); *Callahan v. Order of Ry. Conductors of Am.*, 169 Wis. 43, 47, 171 N.W. 653 (1919) ("[C]ourts will not look into the technical correctness of either the proceedings prescribed or the proceedings followed, and … any reasonable or permissible construction which [a voluntary organization] gives to its own

constitution, laws, or rules will govern unless clearly subversive of personal or property rights."); ***Attoe v. Madison Pro. Policemen's Ass'n***, 79 Wis. 2d 199, 206, 255 N.W.2d 489 (1977) (citing ***Herman*** and ***Callahan***).

¶51     WIAA's member schools have vested discretion in the WIAA Board of Control and those who act on its behalf to interpret and apply WIAA's rules. WIAA's Constitution gives the Board of Control "sole authority to interpret the provisions of the CONSTITUTION, BYLAWS, and RULES OF ELIGIBILITY, and any other regulations which are adopted" and empowers the board to employ an Executive Director and support staff to carry on the work and operations of the association.   Each WIAA member school agrees to "adopt[] the rules of this Association and [to] conduct its athletic program in accordance with the Constitution, Bylaws, Rules of Eligibility and Sports Regulations (boys and girls) *as well as the interpretations and decisions of the WIAA Board of Control.*" (Emphasis added.)

¶52     Wisconsin is not an outlier in applying deferential judicial review of these types of internal decisions; that is the approach taken nationwide.  *See, e.g.,* 78A C.J.S. *Schools and School Districts* § 1120 (2023) ("The general rule and guiding legal principle with respect to high school athletic associations is one of judicial noninterference.").   Athletic associations made up of schools who voluntarily apply for membership have a right to interpret their own rules that "is as sacred as the right to make them." ***Crane v. Indiana High Sch. Athletic Ass'n***, 975 F.2d 1315, 1325 (7th Cir. 1992) (citation omitted).  Thus, when courts are asked to review an athletic association's interpretation and application of its own rules, the association's decision need only be reasonable to be upheld.  *See, e.g.*, ***Kentucky High Sch. Athletic Ass'n v. Hopkins Cnty. Bd. of Educ.***, 552 S.W.2d 685, 687 (Ky. Ct. App. 1977) ("[T]he courts will not substitute their interpretation

of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the voluntary association itself so long as that interpretation is fair and reasonable."), *overruled on other grounds by* ***NCAA v. Lasege***, 53 S.W.3d 77, 89 (Ky. 2001); ***Brown ex rel. Brown v. Oklahoma Secondary Sch. Activities Ass'n***, 125 P.3d 1219, 1224 (Okla. 2005) ("We may not interject ourselves in the Association's internal affairs if the rules are reasonable, lawful, in keeping with public policy, and are interpreted fairly and reasonably and enforced uniformly and not arbitrarily."). Therefore, we must defer to WIAA's interpretation and application of the "next competitive event" rule so long as it is reasonable.

¶53 This deference dovetails with the standards that govern our analysis of Halter's common law certiorari claim. Under the certiorari framework, reasonableness is also a touchstone of judicial review. In examining the merits of WIAA's decision, we limit ourselves to whether: (1) WIAA acted arbitrarily, unreasonably, and in a manner reflecting an exercise of will rather than judgment; and (2) reasonable minds could arrive at the same conclusion it reached. *See, e.g.*, ***Ottman v. Town of Primrose***, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411; ***State ex rel. Brookside Poultry Farms, Inc. v. Jefferson Cnty. Bd. of Adjustment***, 131 Wis. 2d 101, 120, 388 N.W.2d 593 (1986). WIAA's decision is presumed correct and valid, and it is Halter's burden to overcome that presumption. *See* ***Voters with Facts v. City of Eau Claire***, 2018 WI 63, ¶71, 382 Wis. 2d 1, 913 N.W.2d 131.

> **II.** **WIAA's Long-Standing and Consistent Written Guidance Interpreting the "Next Competitive Event" to be One Consistent with the Athlete's Competitive History and From Which the Disqualification Arose Shows Its Decision Was Reasonable.**

¶54 In determining whether WIAA acted reasonably, a key question is whether its decision is consistent with how it has interpreted the relevant rule in

the past. *See* ***Crane***, 975 F.2d at 1325 (explaining that if athletic association rule was applied consistently, "no court could interfere"). Uniform and consistent interpretation and application of a rule is the antithesis of arbitrary decision-making. *See* *id.* (concluding that athletic association's interpretation of residency rule was arbitrary because association "has no consistent idea what these words mean" and its interpretation "seem[ed] to change with the situation at hand."). Publication of the interpretation to members is also a hallmark of reasonable decision-making. *See* *id.* ("The IHSAA's inconsistency is aggravated by the fact that it does not publish any type of written opinion or reasoning for its eligibility decisions to member schools."). Evidence presented to the circuit court showed that WIAA checked both of these boxes.

¶55     The "next competitive event" rule was adopted by the WIAA membership in 1995. From the outset, WIAA recognized that an ejection from the last regular season event for unsportsmanlike conduct would result in a year-ending suspension. A 1994-95 WIAA yearbook discussed the 1995 annual meeting of WIAA membership at which the rule was adopted and showed that WIAA answered several member questions about the rule as follows:

- Question: "[I]n wrestling, if during tournament competition a wrestler was disqualified would he be able to advance?"

  Answer: "[I]n tournaments if a wrestler was disqualified for unsportsmanlike conduct he could not advance."

- Question: "[I]f an unsportsmanlike disqualification took place in an individual sport in the final regular season contest, would it mean that the athlete was then out of tournament competition?"

  Answer: "Yes."

5

¶56 The WIAA also published guidance to members on the application of the "next competitive event" years before the events in this case. The guidance included several examples "of the proper interpretation of the rule," including one directly applicable to Halter's situation:

- Question: A wrestler is disqualified, for unsportsmanlike conduct, in his first match at the conference wrestling tournament. When may he return?

    Answer: The wrestler misses the rest of this tournament competition, plus the following scheduled meet. If the next meet is the WIAA [R]egional, this wrestler misses that competition.

Here, the next scheduled meet for Halter was the WIAA Regional Tournament.[2] It was only *after* his suspension that his coach signed Halter up for the never-before-attended junior varsity event. Even though the guidance example above does not specifically address an intervening lower-level event, other examples in the guidance document make clear that circumventing the rule by participating in a lower-level contest is not an option:

- Question: A player was ejected from a varsity football game, on Saturday, for unsportsmanlike conduct. There is a junior varsity game scheduled for next Thursday, with the next varsity game being next Saturday. When does this athlete serve his suspension?

- Answer: This suspension must be served at the next varsity contest, which is next Saturday. A

---

[2] The majority contends that these questions and answers weigh in Halter's favor, but it interprets them in a manner that is divorced from Halter's undisputed status as a varsity-exclusive wrestler, WIAA's consistent application of the rule in multiple examples and as applied to other athletes, and the purpose of the rule. *See* Majority, ¶27 n.14 & 15.

> suspension received at a higher level cannot be
> satisfied by missing a lower-level contest.[3]

Moreover, the guidance document expressly stated that the examples provided "are not all inclusive" and directed athletic directors with questions "relative to a specific interpretation" to "call the WIAA office." In other words, if Halter's school sought further interpretation of the rule, the WIAA office was available to provide further guidance.

### III. WIAA Consistently Interpreted and Applied the "Next Competitive Event" to Be One Consistent with the Athlete's Competitive History and from Which the Disqualification Arose.

¶57 It is undisputed that WIAA has historically interpreted the "next competitive event" to be one consistent with the athlete's competitive history and from which the disqualification arose. As the circuit court noted, "[n]ot one scintilla of evidence was presented that another application of that rule was given by WIAA over as many years as it's been in effect." It should come as no surprise, then, that the majority is unable to identify such an application.

¶58 Multiple witnesses testified about WIAA's interpretation and application of the rule and their understanding of how it would apply in Halter's situation. Doctor Wade Labecki, the deputy director of the WIAA, who is

---

[3] The majority dismisses consideration of examples involving team sports, but its proffered reason for doing so does not withstand scrutiny. Majority, ¶27. The majority points to WIAA's distinction between team and individual sports, but there is no evidence that WIAA has ever issued separate guidance regarding application of the "next competitive event" rule for team sports and individual sports. Both individual and team sports involve students participating at varsity or junior varsity levels, and as such, WIAA has consistently interpreted and applied the rule to ensure an appropriate consequence for an athlete's unsportsmanlike conduct consistent with the athlete's competitive history and the event from which the disqualification arose, regardless whether it is in a team or individual sport.

primarily responsible for compliance and eligibility decisions and works in the sport of wrestling, testified that the "next competitive event" rule has consistently been applied so that the athlete serves the suspension by sitting out a contest he or she would have otherwise participated in. Labecki explained that the rule's underlying purpose is to impose a meaningful consequence to the offending athlete by precluding eligibility for the next competitive event consistent with the athlete's competitive history and from which the disqualification arose:

> The rule was brought by the membership a couple decades ago and it's to go ahead and provide a consequence for the athlete, so the athlete cannot pick and choose what level [he or she is] disqualified at. The athlete's behavior causes the ejection and where that behavior is most appropriate is where the consequence is going to be.
>
> So a varsity wrestler is not going to suffer a consequence for his behavior if he sits out a JV match that he normally would not sit out of. The next match that he would have a consequence for his behavior would be at the same level that he normally is at which is the varsity level, where they are slated at. So when they're slated to be at that level, that's where you go ahead and apply that consequence.[4]

---

[4] Remarkably, the majority views the rule's underlying purpose—to ensure that the athlete experiences a meaningful consequence for unsportsmanlike conduct—as evidence that WIAA's decision was a product of will rather than judgment. Majority, ¶31. I fail to see how consistent application of a disciplinary rule evidences a lack of judgment, particularly where, as here, multiple witnesses with decades of experience in WIAA and wrestling agreed on how the rule would apply to Halter. As the circuit court noted, beyond Halter's specific case, WIAA's laudatory goal of fair and consistent treatment of unsportsmanlike conduct to set an example for all cannot be overstated. The majority's apparent belief that it knows better than WIAA whether sitting out the junior varsity event and doing homework was sufficient punishment for Halter is, frankly, astonishing. The deference we owe to organizations like WIAA in these types of disciplinary decisions should prevent judges who might disagree with a particular decision from substituting their judgment for that of the organization. Regrettably, it fails to do so here.

¶59    Labecki testified further that he ran Halter's effort to circumvent the rule by Jeremy Schlitz, the president of the Wisconsin Athletic Directors Association (WADA), who agreed with WIAA's interpretation.  Schlitz also testified that his understanding of the rule is that a varsity athlete disqualified from a varsity event must serve the suspension at the varsity level.  He testified further that he believed this understanding was shared by the other athletic directors in WADA.  Labecki's decision to preclude Halter from satisfying the suspension by sitting out the junior varsity event was affirmed by the Executive Director of the WIAA, Dave Anderson.

¶60    Although called by Halter as a witness at the evidentiary hearing, Doctor Lucas Francois, who serves as Waterford Union High School's superintendent and was formerly a WIAA Board of Control member and President of the Wisconsin Wrestling Coaches Association, also understood the "next competitive event" to be "the event that the student athlete would regularly participate in."

¶61    Beyond these witnesses' shared understanding of the rule, Labecki testified about several prior occasions in which WIAA had applied the rule consistently with that understanding, one of which the circuit court noted was "right on point."  On that particular occasion, a varsity wrestler from Oconto Falls who received a code of conduct violation at a conference match was not permitted to maintain his eligibility to compete in a regional tournament the following weekend by serving his suspension at an intervening junior varsity match.[5]

---

[5]  The other recent rule applications given by Labecki were as follows:

(continued)

¶62    Indeed, just a few days before the meet at which Halter was ejected, Labecki sent an email to all WIAA member schools that fielded wrestling teams warning that an athlete's ejection from their last event before regionals would result in disqualification from the varsity regionals.    The email stated: "**Important Note to Coaches!**  Keep in mind, any wrestler who is ejected from competition in their last event before regionals (typically conference tournaments), for any reason, *will be ineligible for regional competition the following week*." Thomas Fitzpatrick, Halter's wrestling coach, discussed this with his wrestlers before the February 2, 2019, event.

¶63    Lastly, given Halter's challenge, the first in over twenty-three years of the rule's existence, the WIAA Board of Control voted unanimously to clarify the rule to prevent others from seeking to circumvent it and to discourage litigation such as this case.  The majority's suggestion that this clarification was in reality a substantive change to the rule ignores that the newly added language is consistent with the guidance documents, examples, past practices, and the purpose of the rule.  The revision did not effect a change in the rule, rather, it confirmed the long-standing interpretation and application.

- A soccer player disqualified was not permitted to sit out a football game as a kicker to avoid missing the next soccer game.

- A football player disqualified from a junior varsity game was instructed to sit out a varsity game if that is where the majority of his playing time occurred.

- Another football player disqualified from a junior varsity game was instructed to serve a suspension "on the level he was ejected from and play[ed] the most."

¶64     In sum, WIAA promulgated the "next competitive event" rule, had exclusive and broad discretion to interpret it, provided on-point written guidance to member schools as to how it would be interpreted, invited members to seek clarification or further interpretation if they had questions, and applied the rule in Halter's case consistently with prior cases and in a manner that effectuated the rule's underlying purpose.  Its decision was reasonable and the law requires that we defer to it.

### IV.     The Majority Holds that WIAA Should Have Interpreted and Applied the "Next Competitive Event" Rule to Permit Hayden to Circumvent His Sanction.

¶65     Halter does not challenge the ejection decision on appeal, and neither he nor the majority try to make the case that permitting him to circumvent his sanction is reasonable.  Halter had never participated in a junior varsity event in his two years of high school wrestling, and he admitted that, but for his suspension, he had no intention of wrestling in the intervening junior varsity match.  Halter's coach acknowledged the same.  Halter acknowledged that the only "consequence" he served was doing homework at school while missing a match in which he otherwise would not have participated.  As the circuit court aptly stated, that was "no sanction whatsoever."

¶66     Halter's interpretation, which the majority contends WIAA arbitrarily rejected, is clearly inconsistent with the rule's underlying purpose and unfair vis-à-vis other athletes.  It afforded him a suspension of no consequence and permitted him to compete with others who played by the rules.  It is also unfair to athletes who have been ejected but who lacked a similar fortuitous opportunity to serve a suspension at an intervening lower-level competition.

11

### V. The Majority's "Plain Meaning" Textual Interpretation Finds No Support in the Law Applicable to Voluntary Organizations.

¶67    The majority's approach to resolving this appeal is out of step with the well-established deferential standard of review we apply when asked to review a voluntary organization's interpretation and application of its own rules. The majority instead engages in something akin to a "plain meaning" textual analysis, treating the WIAA rule as if it were a statute and emphasizing that it did not specifically state that a suspension had to be served at the same level of competition. That is not the appropriate analytical framework. Unlike legislatures, voluntary organizations like WIAA do not, and need not, draft their rules with technical precision, anticipating that they could later be subject to judicial scrutiny. *See Brown*, 125 P.3d at 1226. Instead, such associations may draft more general rules that are later refined through interpretation and application in specific situations. *See id.* (explaining that an association "need not construe its constitution, rules or handbooks in a technical manner in order to avoid judicial interference" but instead "has discretion in construing its rules and determining their applicability"). Moreover, as the majority agrees, this case does not involve a property, constitutional or other civil right that might warrant less deference than is the norm. There are no canons or rules of strict construction applicable here, nor any other legal grounds to substitute the majority's judgment

for WIAA's reasonable, consistent, and long-standing interpretation and application.[6]

¶68    *Crane*, 975 F.2d 1315, cited favorably by the majority, exemplifies a situation in which deference was not appropriate. Majority, ¶19. In that case, the Court of Appeals for the Seventh Circuit (applying Indiana law) considered whether the Indiana High School Athletic Association's (IHSAA) interpretation of its own rule on a student's eligibility to participate in sports at a transfer school was reasonable. The court held that if a rule is consistently interpreted and applied, the courts could not interfere. *Id.* at 1325. While the rule at issue left several terms undefined, that alone would not support court interference if the organization applied the rule consistently. *Id.* However, because IHSAA had not applied the rule consistently, had no guidance documents, provided changing explanations that were not consistent with the rule, and could not explain how it applied the rule to transfers involving different factual situations, the court found that the organization's interpretation of its own rule was arbitrary. *Id.* at 1326.

¶69    Not so here. The facts show that WIAA consistently interpreted and applied the rule, and there is nothing unreasonable or arbitrary about its own interpretation. Perhaps more to the point, the majority provides no legal authority

---

[6] Nor is there any basis to suggest the "next competitive event" rule is void for vagueness or otherwise fails to provide sufficient notice in violation of due process. The guidance documents provided clearly applicable but non-exhaustive examples and advised that any further questions would be addressed by the WIAA office. Halter's school agreed to abide by WIAA's interpretation of the rules. WIAA advised Halter's school before and after the unsportsmanlike conduct incident that disqualification would result in suspension for the varsity regionals the following weekend, and Halter's coach discussed the warning with his wrestlers. Halter acknowledged that he knew that the consequence of his ejection was suspension from the next varsity event—the Regional Tournament.

precluding a voluntary organization from adopting a general disciplinary rule suited to application to various factual circumstances and later providing guidance documents and applying the rule in specific situations to ensure consistent effectuation of the rule's purpose. *Crane*, as well as common sense, tell us that a voluntary organization need not spell out all details in a rule that will be applied in a variety of factual circumstances. *Id.* at 1325. What matters is that the rule is consistently applied.

## CONCLUSION

¶70    In short, there is no legal basis upon which to supplant WIAA's reasonable interpretation given all of the evidence showing WIAA had applied the rule consistently and in accordance with written guidance published to its member schools. The majority's substitution of its own judgment for that of WIAA is in contravention of Wisconsin precedent mandating deference to WIAA's reasonable interpretation of its own rule. It is patently erroneous.[7]

---

[7] For this reason, I would affirm the circuit court's decision, which renders unnecessary decisions as to whether WIAA is a state actor and whether the appeal procedure was appropriately applied.